[No. 27701. Department One. January 3, 1940.]

J. C. VERLINE *et al., Respondents,* v. O. C. HYSSOP *et al., Appellants.*[1]

*John F. Aiken,* for appellants.

*Pettijohn & McCallum,* for respondents.

[1] Reported in 97 P. (2d) 653.

BLAKE, C. J.—The plaintiffs are the owners of a hotel—building and furnishings—in Harrington. They leased the property to the defendants for a five-year term beginning May 15, 1937, at a monthly rental of fifty dollars, payable in advance on the fifteenth day of each month of the term. The defendants covenanted "to pay . . . the . . . rent in the manner . . . specified." They defaulted, however, in the payment of the installment of rent due on October 15, 1938.

Subsequent to that date, they were notified by the lessors to pay the rent within ten days or surrender possession. The defendants did neither. On November 10th, they were served with notice of forfeiture of the lease. In December, this action was commenced for possession of the property and damages.

The defendants answered, alleging that they were not in default. This defense rested on two theories: (1) That, by reason of past indulgences on the part of the lessors with respect to the time of payments, the lease was not subject to forfeiture until a reasonable time had elapsed after notice to pay; (2) that the lessees had been compelled to make repairs which the plaintiffs had covenanted by the terms of the lease to make, and that the cost of these repairs exceeded the amount due.

The cause came on for trial in March, 1939, with defendants still in possession of the property. After hearing the evidence, the trial court found that the plaintiffs had fulfilled their covenant to make repairs, and that the defendants were in default in payment of rent from October 15, 1938. Judgment was entered awarding the plaintiffs immediate possession of the property and two hundred and fifty dollars damages for wrongful possession by defendants subsequent to the notice of forfeiture and demand for possession

served on them on November 10th. The defendants appeal.

■ Appellants first contend that the action cannot be maintained because of failure of respondents to bring themselves within the provisions of the unlawful detainer statutes, Rem. Rev. Stat., § 812 [P. C. § 7970] *et seq.* The remedy afforded by that act, however, is not exclusive. Upon allegations of the lessee's default and wrongful possession, a landlord may still maintain an action in ejectment. Rem. Rev. Stat., § 785 [P. C. § 7517]; *Gustin v. Klingenberg,* 190 Wash. 590, 70 P. (2d) 308; Warvelle on Ejectment, §§ 150 and 151.

■ The next contention made is based on the first theory of appellants' defense: That respondents, having in the past granted indulgences with respect to the time of payments of rent, could not claim a forfeiture without giving appellants a reasonable time after notice to pay the rent due on October 15th. In support of this contention, appellants cite a line of cases holding that a vendor, having waived strict compliance with an "essence of time" clause in the contract, cannot claim a forfeiture without giving the vendee a reasonable time to perform.

The principle of those cases is not applicable to an action in ejectment brought by a landlord against a tenant for default in payment of rent. Under Rem. Rev. Stat., § 785, a demand for the payment of the rent in arrears was the only condition precedent to maintenance of the action. See *Carlson v. Curran,* 42 Wash. 647, 85 Pac. 627, 6 L. R. A. (N. S.) 260; *Lewiston Water & Power Co. v. Brown,* 42 Wash. 555, 85 Pac. 47; Warvelle on Ejectment, § 149 *et seq.;* 2 Tiffany, Landlord and Tenant, § 194, subd. f.

■ Appellants' final contention rests upon the principle that, in an action for rent, a tenant may recoup

on account of expenditures incurred in making repairs which the landlord covenanted to make. *Tipton v. Roberts*, 48 Wash. 391, 93 Pac. 906; *Income Properties Inv. Corp. v. Trefethen*, 155 Wash. 493, 284 Pac. 782. Respondents covenanted "to repair and keep roof in good condition. Also agree to have a return system put on the heating plant."

Whether respondents had performed these covenants was the principal issue in controversy and the one to which practically all of the evidence was directed. The trial court found:

". . . that the plaintiffs placed a new roof on the building and have at all times kept the same in repair and in good condition, . . .

". . . that the plaintiffs did put in a return system on the heating plant, and have complied with the terms of the lease in that respect."

The finding with respect to the roof is, to our minds, supported by an overwhelming preponderance of evidence.

Where the weight of the evidence rests with respect to the heating plant, is not so clear. That respondents made a good-faith attempt to carry out their covenant, there can be no doubt. In September, 1937, they spent approximately three hundred dollars to install what was represented to be a "return system." That it was not adequate, is admitted. In December of that year, respondents put in two hundred dollars more on a return system. Whether this installation was "a return system," there is a contrariety of opinion among the experts—some saying it was and some saying not. That the guests found trouble in keeping warm, there is no doubt. But again there is dispute as to whether their plight was due to inadequacy of the system or over-economy in firing.

The evidence is so evenly divided on these

points that we are unable to say that it preponderates either way. Consequently we must accept the finding of the trial court on the issue. *Columbus Varnish Co. v. Seattle Paint Co.*, 77 Wash. 245, 137 Pac. 434.

Judgment affirmed.

MILLARD, MAIN, ROBINSON, and SIMPSON, JJ., concur.